Filed 4/19/22  P. v. Cooks CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B311550 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA027273) |
| v. | |
| WILLIE JAMES COOKS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Chet Taylor, Judge.  Affirmed in part and reversed in part with directions.

Christopher Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Willie James Cooks appeals from the trial court's denial of his petition for resentencing under Penal Code[1] section 1170.95. In his original trial, defendant was convicted of murder and attempted murder, after the jury had been instructed on theories of both malice aforethought and the natural and probable consequences doctrine. The jury further found defendant in committing the murder intentionally inflicted death by discharging a firearm from a motor vehicle, and in committing the attempted murder intentionally inflicted great bodily injury by discharging a firearm from a motor vehicle. In denying defendant's section 1170.95 petition, the trial court concluded the true findings on the firearm allegations established defendant was the actual killer and ineligible for resentencing.

We agree with the trial court that the jury, in finding that defendant intentionally inflicted death when committing the murder, necessarily found defendant committed the murder with malice aforethought, rendering that count ineligible for resentencing under section 1170.95. On the limited record before us, however, we cannot conclude the jury necessarily found defendant acted with malice aforethought as to the attempted murder count. It is conceivable the jury found defendant merely intended to participate in an assault, with the intent to injure, not kill, but nonetheless was liable under the natural and probable consequences doctrine because his confederate acted with intent to kill. Accordingly, we reverse the trial court's order as to the attempted murder count and remand for further proceedings under section 1170.95.

---

[1] Unspecified statutory citations are to the Penal Code.

2

## FACTUAL BACKGROUND

We paraphrase the factual recitation from our opinion in defendant's direct appeal, *People v. Cooks* (Oct. 4, 1993, B063083) [nonpub. opn.].[2] Defendant and Michael Twyman were members of rival gangs. On October 12, 1990, Twyman was riding on a motorcycle. He saw defendant sitting in a car. Defendant pointed a gun at him and shots rang out. One shot hit Yvonne Edna Walters, a pedestrian, who died from the wound an hour later. Another shot struck Twyman in the back. As a result of the injury, doctors had to remove Twyman's spleen, pancreas, and kidney. Investigators later determined that Walters was shot with a .38-caliber bullet, and Twyman was shot with a .45-caliber bullet.

Although the full trial record is not in the record of this appeal, based on the prosecutor's closing argument it was conceded there was a second person in the car along with defendant.

---

[2] Amendments to section 1170.95 effective January 1, 2022, arguably limit consideration of prior appellate opinions to "the procedural history of the case," and not the factual summaries. (§ 1170.95, subd. (d)(3); Stats. 2021, ch. 551, § 2; see *People v. Clements* (2022) 75 Cal.App.5th 276, 292 ["the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section 1170.95 petition reaches the stage of a full-fledged evidentiary hearing"].) We provide this factual summary for context, but do not rely upon it in reaching our holding.

## PROCEDURAL BACKGROUND

### 1.   *Trial and original judgment*

At trial, the jury was instructed on murder and attempted murder with malice aforethought.  The jury was instructed on both express and implied malice.  As to the murder charge, the trial court instructed on the lesser included offenses of involuntary manslaughter and assault with a firearm, and as to the attempted murder charge instructed on the lesser included offense of assault with a firearm.

The jury also was instructed on aider and abettor liability.  Among those instructions was the following:  "One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and probable consequences of any criminal act that he knowingly and intentionally aided and abetted.  You must determine whether the defendant is guilty of the crime originally contemplated, and, if so, whether [murder and attempted murder] was a natural and probable consequence of such originally contemplated crime."  This instruction was given presumably because the prosecutor argued in closing that even if the second person in the car shot the victims, and defendant was merely the driver, defendant nonetheless was guilty of murder and/or attempted murder as an aider and abettor.

The jury further was instructed on two firearm enhancements both to be applied to the murder and attempted murder counts.  One was for personal use of a firearm under section 12022.5, subdivision (a).  The other firearm enhancement was under section 12022.55.  The instruction on that latter enhancement provided, in relevant part, "you must determine

4

whether or not . . . defendant, with the specific intent to inflict such injury or death, did personally inflict great bodily injury or death on some person . . . as a result of discharging a firearm from a motor vehicle."

As to the attempted murder count, the jury also was instructed, pursuant to the enhancement under section 12022.7, to determine whether "defendant, with the specific intent to inflict such injury, did personally inflict great bodily injury[ ] on Michael Twyman . . . ."

The jury convicted defendant of first degree murder and willful, deliberate, and premeditated attempted murder. The jury found true the allegations under section 12022.5, subdivision (a) that in committing each offense, defendant personally used a firearm. As to the murder count, the jury also found true "the allegation that in the commission . . . of the above offense the defendant . . . , with the intent to do so, inflicted great bodily injury and death upon Yvonne Edna Walters as a result of discharging a firearm from a motor vehicle in violation of Penal Code section 12022.55."

As to the attempted murder count, the jury found true "the allegation that the defendant . . . , with the intent to do so, inflicted great bodily injury on Michael Twyman as a result of discharging a firearm from a motor vehicle in violation of Penal Code section 12022.55." The jury also found true "the allegation that in the commission . . . of the above offense the said defendant . . . , with the intent to inflict such injury, personally inflicted great bodily injury upon Mich[ae]l Twyman . . . within the meaning of Penal Code section 12022.7."

The trial court's judgment is not in the record before us. Defendant represented below, however, that he was sentenced to

30 years to life for the murder, and life plus three years for the attempted murder. Defendant's specific sentence is not at issue in this appeal.

## 2. *Petition for resentencing*

In January 2021, counsel retained by defendant filed a petition for resentencing under section 1170.95. The petition contended defendant was eligible for resentencing because the trial court instructed the jury on the now-invalid natural and probable consequences doctrine, and the prosecutor relied on that theory in arguing that defendant was culpable for the charged offenses. Attached to the petition were, inter alia, the verdict forms, jury instructions, and prosecutor's closing argument from defendant's trial.

According to a colloquy between the trial court and a deputy district attorney, the attorney who filed the petition indicated she was hired solely for that purpose and did not wish to further represent defendant in the proceedings. The record does not indicate the trial court appointed new counsel, or that the parties filed any further briefing.

On February 25, 2021, the trial court "summarily" denied the petition, finding defendant "has failed to state a prima facie case and is not entitled to relief as a matter of law." The trial court concluded the jury's true findings that defendant personally used a firearm and personally inflicted great bodily injury indicated the jury found him to be the actual killer, and therefore he was ineligible for resentencing under section 1170.95.

Defendant timely appealed. We appointed counsel, who filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, raising no issues and asking the court to conduct an independent review of the record. At our invitation, defendant filed a

6

supplemental brief. Upon reviewing the record and the supplemental brief, we requested and received further briefing on several issues. Those issues are: Did the trial court commit reversible error by failing to appoint counsel; did the true findings on the enhancements render defendant ineligible for relief under section 1170.95; assuming the enhancements did not render defendant ineligible for relief, was there any other basis to conclude he failed to make a prima facie showing of entitlement to relief; and what impact did amendments to section 1170.95 effective January 1, 2022 have on the case?

## DISCUSSION

### A.    Applicable Law

To be convicted of murder, a jury ordinarily must find that the defendant acted with the requisite mental state, known as " 'malice aforethought.' " (*People v. Chun* (2009) 45 Cal.4th 1172, 1181, quoting § 187, subd. (a).) " ' "[M]alice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature." [Citation.] It is implied when the defendant engages in conduct dangerous to human life, " 'knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life.' " [Citation.]' [Citation.]" (*People v. Smith* (2021) 70 Cal.App.5th 298, 308.)

"[U]ntil recently, when a person aided and abetted a nonhomicide crime that then resulted in a murder, the natural and probable consequences doctrine allowed him or her to be convicted of murder without personally possessing malice aforethought." (*People v. Gentile* (2020) 10 Cal.5th 830, 845 (*Gentile*).) Under the natural and probable consequences

7

doctrine, "an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted (i.e., the nontarget offense)." (*Id.* at p. 843.)  In the case of a homicide, then, "[s]o long as the direct perpetrator possessed malice, and the killing was a natural and probable consequence of the crime the defendant aided and abetted," the defendant is culpable for murder regardless of "whether the defendant intended to kill or acted with conscious disregard for human life."  (*Id.* at p. 845.)

"Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) amended section 188 to provide that '[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' (Stats. 2018, ch. 1015, § 2.)  The amendment effectively 'eliminates natural and probable consequences liability for first and second degree murder.' [Citation.]"[3] (*People v. Garrison* (2021) 73 Cal.App.5th 735, 742 (*Garrison*).)

Senate Bill No. 1437 also enacted section 1170.95, which provides a procedure by which a person convicted of murder under a theory invalidated under Senate Bill No. 1437, including the natural and probable consequences doctrine, may petition to vacate the conviction.  (*Gentile*, *supra*, 10 Cal.5th at p. 843;

---

[3] Senate Bill No. 1437 also amended section 189 to limit liability for felony murder except in specified circumstances.  (See § 189, subd. (e); Stats. 2018, ch. 1015, § 3.)  Felony murder is not at issue in this case.

§ 1170.95, subd. (a)(3).)  Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill No. 775) amended 1170.95 effective January 1, 2022 to expand its reach to defendants convicted of attempted murder and manslaughter.  (§ 1170.95, subd. (a); Stats. 2021, ch. 551, § 2.)

Upon receipt of a complying petition under section 1170.95, the trial court must appoint counsel, allow briefing, and then determine if the petitioner has made a prima facie showing that, inter alia, "[t]he petitioner could not presently be convicted of murder or attempted murder" under the amendments to the Penal Code enacted under Senate Bill No. 1437.  (§ 1170.95, subds. (a)(3), (c).)

In making the prima facie determination, the trial court must " ' "take[ ] [the] petitioner's factual allegations as true and make[ ] a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. . . ." ' [Citation.]"  (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).)  " '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]" (*Ibid.*)  The court may rely on the record of conviction in making the prima facie determination, however, and " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]" (*Ibid.*)

If the petitioner makes a prima facie showing, the trial court must issue an order to show cause, then hold an evidentiary hearing to determine whether to vacate the conviction. (*Garrison*, at p. 743; § 1170.95, subds. (c), (d).)  At that hearing,

9

the trial court "act[s] as an independent fact finder[ ] to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder." (*Garrison*, at p. 745; see § 1170.95, subd. (d)(3) ["the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019"].)

**B.    The Record Of Conviction Establishes That Defendant Is Ineligible For Resentencing On The Murder Conviction As A Matter Of Law**

We conclude the trial court properly found defendant ineligible for resentencing on his murder conviction. Although in defendant's original trial the jury was instructed on the natural and probable consequences doctrine, the record of conviction establishes that the jury did not rely on that theory to convict defendant of murder. This is evident from the jury's true findings on the firearm enhancement under section 12022.55. As to that enhancement, the verdict form indicates the jury found defendant, "with the intent to do so, inflicted great bodily injury and death upon Yvonne Edna Walters as a result of discharging a firearm from a motor vehicle." The finding that defendant "with the intent to do so, inflicted . . . death" is a finding that defendant acted with intent to kill, the essence of express malice aforethought. (See *People v. Soto* (2018) 4 Cal.5th 968, 976.) Thus, defendant's murder conviction remains valid despite the changes to section 188 and 189, and he is ineligible for relief on that conviction under section 1170.95.

Defendant argues the jury's findings do not establish he was the sole shooter and actual killer. The jury found defendant

10

"inflicted . . . death upon" Walters by discharging a firearm, thus clearly finding that defendant was the actual killer.  It is irrelevant if defendant was the sole shooter or someone else joined him in shooting at the victim.

Defendant cites our opinion in *People v. Offley* (2020) 48 Cal.App.5th 588 (*Offley*) as an example of a case holding that a true finding under a different firearm enhancement did not preclude eligibility for resentencing under section 1170.95.  *Offley*, however, is inapposite as to defendant's murder conviction.

Offley was convicted of murder, attempted murder, and shooting at an occupied motor vehicle after he and several fellow gang members fired shots into a vehicle, killing one occupant and seriously wounding another.  (*Offley, supra*, 48 Cal.App.5th at pp. 592–593.)  The jury had been instructed on the natural and probable consequences doctrine in cases of conspiracy, thusly: " 'A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime of a co–conspirator to further the object of the conspiracy, even though that crime was not intended as a part of the agreed upon objective and even though he was not present at the time of the commission of that crime.' " (*Id.* at p. 593.)  The prosecutor argued to the jury that it could convict on the basis of this instruction, stating "that the 'common design of [the] conspiracy' was 'assault with a firearm,' and that any member of the conspiracy was 'guilty of, not only that particular crime, but also the natural and probable consequence of any crime of the co-conspirator.' " (*Id.* at p. 599.)

11

Following passage of Senate Bill No. 1437, Offley petitioned for resentencing under section 1170.95. (*Offley*, *supra*, 48 Cal.App.5th at p. 594.) The trial court denied the petition without appointing counsel or holding a hearing because the jury had found true allegations supporting an enhancement under section 12022.53, subdivision (d). (*Offley*, at p. 597.) Section 12022.53, subdivision (d) imposes a 25-year-to-life enhancement if the defendant, in the commission of certain enumerated felonies, "personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death." The trial court concluded these findings precluded relief under section 1170.95. (*Offley*, at p. 594.)

We reversed. We noted that the enhancement under section 12022.53, subdivision (d) requires that the defendant "intended to discharge a firearm, but does not refer to an 'intent to achieve any additional consequence.' [Citation.] It is thus a general intent enhancement, and does not require the prosecution to prove that the defendant harbored a particular mental state as to the victim's injury or death." (*Offley*, *supra*, 48 Cal.App.5th at p. 598.) "Because an enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought." (*Ibid.*)

We therefore "c[ould not] exclude the possibility that the jury believed Offley acted without intending to kill [the victim] or consciously disregarding that risk. The jury might have concluded that Offley intended to take part in a conspiracy to commit assault with a firearm, or to fire into an occupied vehicle, with the aim of either injuring or merely frightening [the victim].

12

The jury could have then concluded that [the victim's] death was the natural and probable consequence of the conspiracy and convicted him of murder without finding beyond a reasonable doubt that he acted with malice aforethought." (*Offley*, *supra*, 48 Cal.App.5th at p. 599.)

*Offley* concerned a different enhancement from the enhancement at issue here. The jury's true findings on the section 12022.53, subdivision (d) enhancement in *Offley* established only that the jury found the defendant had intentionally fired a gun, but not that he did so with intent to kill or a conscious disregard for life. Here, as we have explained, the true findings on the section 12022.55 firearm enhancement on the murder charge included a finding that defendant intended to kill. The finding of intent missing from the enhancement in *Offley* was present here, rendering defendant ineligible for relief on the murder conviction.

Because defendant is ineligible for relief on the murder conviction as a matter of law, any error in the trial court reaching that determination before appointing counsel was harmless. (*People v. Mancilla* (2021) 67 Cal.App.5th 854, 863; see *Lewis*, *supra*, 11 Cal.5th at p. 973 [failure to appoint counsel under section 1170.95 is state law error subject to harmless error analysis].)

## C. The Record Of Conviction Does Not Render Defendant Ineligible For Relief As To His Attempted Murder Conviction

Although defendant is ineligible for resentencing on his murder conviction, the record of conviction does not render him ineligible as to his attempted murder conviction.

13

At the time the trial court denied defendant's section 1170.95 petition, the relief available under that statute applied only to those convicted of murder, not attempted murder. (See § 1170.95, former subd. (a) (Stats. 2018, ch. 1015, § 4.) As discussed, Senate Bill No. 775 expanded section 1170.95 to apply to convictions for attempted murder as well.

At least two courts have concluded Senate Bill No. 775's expansion of section 1170.95 to include attempted murder applies retroactively to judgments not yet final as of the effective date of the amendments. (*People v. Porter* (2022) 73 Cal.App.5th 644, 651–652; *People v. Montes* (2021) 71 Cal.App.5th 1001, 1006–1007.) This conclusion makes particular sense in the context of section 1170.95 petitions, which could simply be refiled under the current law were we to deny them on the basis of the prior law. For the sake of judicial economy, if nothing else, we will apply the amended, current version of section 1170.95 to this appeal, in which judgment is not yet final.

We now turn to the question of whether the record of conviction precludes eligibility for resentencing on the attempted murder charge. We conclude it does not. Whereas the true finding on the section 12022.55 enhancement on the *murder* charge included a finding that defendant acted with intent to kill, the true finding on that same enhancement on the *attempted* murder charge stated only that defendant had acted with intent to cause great bodily injury, not intent to kill.

In *Offley*, in which the jury found Offley had caused great bodily injury by firing a gun, we held it was conceivable the jury concluded that Offley nonetheless did not intend to kill, but only to "take part in a conspiracy to commit assault with a firearm . . . with the aim of either injuring or merely frightening" the victim.

14

(*Offley*, *supra*, 48 Cal.App.5th at p. 599.)  In that event, the jury would have convicted Offley of murder not because he acted with malice aforethought, but because the victim's death "was the natural and probable consequence of the conspiracy."  (*Ibid*.)

Here, too, the jury was instructed on the lesser offense of assault with a firearm as well as the natural and probable consequences doctrine.  As in *Offley*, it is conceivable the jury found that defendant intended to participate only in an assault with a firearm, and fired at Twyman with an intent to injure, not kill.  If the other occupant of the vehicle, however, fired at Twyman with intent to kill, thus committing attempted murder, the jury could extend that liability to defendant under the natural and probable consequences doctrine, despite defendant's lack of malice aforethought.

We acknowledge that someone who fires a gun at another with the intent to cause great bodily injury, as the jury found defendant did, may be acting with a conscious disregard of danger to life, thus acting with implied malice.  As we noted in *Offley*, however, a finding of implied malice "requires ' "examining the defendant's subjective mental state to see if he or she actually appreciated the risk of his or her actions." [Citation.]  "It is not enough that a reasonable person would have been aware of the risk." ' [Citation.]" (*Offley*, *supra*, 48 Cal.App.5th at p. 598.)  Thus, although firing a gun at someone with an intent to cause great bodily injury is objectively a life-endangering act, a finding that someone committed that act does not necessarily indicate a finding that the perpetrator subjectively appreciated the risk.  Here, we cannot conclude based on the verdict forms and the jury instructions that the jury did not fall back on the natural and probable consequences

15

doctrine rather than make findings as to defendant's subjective mental state.

The Attorney General argues the jury could not have found defendant was an aider and abettor because the true findings on the enhancements establish defendant was the direct perpetrator. As we have explained, however, it is possible for the jury to have found defendant, in firing at Twyman, to be directly culpable for assault while simultaneously being vicariously culpable under the natural and probable consequences doctrine for the attempted murder perpetrated by his confederate. Although the Attorney General argues the record of conviction establishes defendant was the "sole shooter," the jury's finding that defendant shot and injured Twyman does not obviate the possibility that defendant's confederate also shot at Twyman.

The Attorney General cites *People v. Cornelius* (2020) 44 Cal.App.5th 54 for the proposition that a jury's finding that a defendant personally used a firearm establishes he was the actual killer and thus ineligible for relief under section 1170.95. *Cornelius* contains no discussion of the jury instructions given in that case or the content of the verdict forms apart from the jury finding true the allegations under sections 12022.5, subdivision (a)(1) and 12022.53, subdivision (d). (*Cornelius*, at p. 56.) We therefore cannot discern if the circumstances of *Cornelius* are analogous to those of the instant case, and on that basis decline to apply its holding.

Also unavailing to the Attorney General is our decision in *Garrison*, in which we concluded the evidence presented in a hearing under section 1170.95, subdivision (d), including evidence that the defendant had pleaded to personal use of a firearm, established the defendant was the "actual killer" and

16

thus ineligible for resentencing.  (*Garrison*, *supra*, 73 Cal.App.5th at p. 743.)  Here, there has been no evidentiary hearing, and thus no opportunity for the trial court to determine as an independent factfinder the circumstances of the underlying offenses.  Thus, while in *Garrison* we held "[t]he record supports only one conclusion," namely that Garrison was the direct perpetrator and actual killer (*ibid.*), here the limited record before us supports at least two conclusions, one of which is that the jury convicted defendant of attempted murder under the natural and probable consequences doctrine.  We therefore cannot hold at this early stage of the proceedings that defendant is ineligible for resentencing on his attempted murder conviction.  The trial court may draw its own conclusions on a more complete record following an evidentiary hearing under section 1170.95, subdivision (d).

## DISPOSITION

The order is affirmed to the extent it denies defendant's petition as to his conviction for murder.  The order is reversed to the extent it denies defendant's petition as to his conviction for attempted murder.  The trial court is instructed to appoint counsel for defendant, issue an order to show cause, and conduct further proceedings in accordance with Penal Code section 1170.95.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

18